In the matter of the application of THOMAS WHITAKER, executor of Sarah N. Garton, deceased, for sale of lands for payment of debts.

[Argued June 22d, 1906.   Decided November 23d, 1906.]

1. Before an orphans court may make an order for the sale of lands of a testatrix to pay debts which her personal estate is insufficient to pay, the executor who seeks the order must have applied all the personal estate to their payment, including specific legacies.   The legatee's right to contribution cannot be considered in the proceeding to sell land.

2. Upon such a proceeding it appeared in the orphans court that the testatrix died seized of a number of dwelling-houses and lots, valued by the executor at $5,600; that the debts unpaid were $1,287.37, and if a specific legacy should be applied they would be reduced to $287.37, and that the sale of any two houses would raise the whole of the unpaid debts, and of any one house would raise the debts after application of the specific legacy.—*Held*, that the orphans court should have directed the sale of such houses as would have been sufficient and no more, and that the order requiring the executor to sell all the houses was erroneous, there being no evidence that the sale of any one or two of them would diminish the value of the others.

On appeal from the Cumberland county orphans court.

*Mr. Louis H. Miller,* for the appellants.

*Mr. William A. Logue,* for the respondent.

MAGIE, ORDINARY.

This application seeks the reversal of an order of the Cumberland county orphans court directing Thomas Whitaker, the executor of the last will and testament of Sarah N. Garton, deceased, to sell all the real estate of which she died seized, because her personal estate was insufficient to pay her debts.

On behalf of appellants, it is first contended that the order was made without any proofs such as are required by section 83 of the Orphans Court act of 1898.   *P. L. 1898 p. 747.*   But this objection cannot prevail.   The order in question expressly recites

that on the return day of the rule to show cause, which had been previously made, the court heard and examined the allegations and proofs of the parties, and thereupon determined that testatrix's personal estate was insufficient to pay her debts. The printed case does not show what proofs were taken, but that none were taken cannot be inferred in contradiction of the express statement of the order.

It is next contended that the order is erroneous in that it directs testatrix's lands to be sold to raise a deficiency of $1,287.37, although it appears by the order that the executor had not applied to the payment of the debts the sum of $1,000 secured by a mortgage held by testatrix against lands in this state. If that sum could be collected by the executor upon the mortgage, and if he applied it to the payment of the debts, the deficiency would have been only $287.37. There is nothing to show, and it was not asserted on the argument, that the mortgage was uncollectible. The failure·of the court to require the executor to apply the sum secured thereby to the payment of debts before asking an order to sell appears to have been grounded upon an adjudication that the mortgage had been specifically bequeathed by testatrix to her daughter Sarah. The will of testatrix is printed in the case, and perhaps it may be inferred that it was among the proofs before the orphans court. It sustains the view that there was a specific bequest of that mortgage. But that fact, in my judgment, did not justify the executor in withholding it from application to the payment of debts, or the court in approving his conduct. The mortgage is personal estate in the hands of the executor, and must be applied to the payment of debts before any lands can be sold.

It is true that the rule is that for debts of a testator remaining undischarged after the application of his estate not specifically given specific legacies and the lands devised must contribute ratably. *Thomas* v. *Thomas, 17 N. J. Eq. (2 C. E. Gr.) 356; Langstroth* v. *Golding, 41 N. J. Eq. (14 Stew.) 49; Wiggins* v. *Wiggins, 65 N. J. Eq. (20 Dick.) 417.* But the jurisdiction of the orphans court to order a sale of lands to pay debts does not invest that court with power to determine and enforce the equities of contribution between the devisees and the

legatees of a specific bequest. By the statute lands are to be sold only for debts remaining undischarged after the application of the personal estate. If a specific legacy is thereby exhausted, the legatee may doubtless enforce her equity to require the devisees to aid in repairing her loss by making payment of their proper proportion thereof.

It may be added that the order, in exonerating the legatees from having her mortgage primarily applied to debts, and so casting the whole of the debts upon the lands, reverses the scheme of the act, and would require the devisees to seek contribution out of the specific legacy.

In this respect the order is erroneous.

It is next contended that the order is erroneous in that it directs the executor to sell all the lands of which testatrix died seized.

The petition of the executor discloses that testatrix died seized of three double dwelling-houses and lots in Cumberland county, and of two halves of double dwelling-houses and lots in Gloucester county, to which the executor fixed a valuation amounting to $5,600. These were all devised to different people, and are all ordered to be sold to raise $1,287.37. The executor is further ordered to apply to the Gloucester county orphans court for an order to sell the lands that lie in that county, pursuant to the provisions of sections 83 and 84 of the Orphans Court act of 1898. *P. L. 1898 p. 745.*

The order was made apparently on two grounds, and if they justify a sale of over $5,000 worth of lands to pay less than $1,300 of debts, they would equally support a sale of all of them to pay the $287.37 which will remain after the application of the mortgage to the debts.

One ground is that all the real estate devised should contribute ratably to the payment of debts. This is no doubt a correct statement of the equities of the parties, but the statute gives no authority to the orphans court to work out those equities, or to direct the sale of all the real estate for that purpose. On the contrary, it expressly directs that no more thereof shall be sold than is sufficient to pay the debts (except under one specific condition), and then by the last clause of section 95 it enacts that

any devisee whose lands devised have been sold for the payment of debts of his devisor may compel others holding under the testator to contribute in proportion to their respective interests, so as to equalize the burden or loss. I do not think it possible to find in this enactment any jurisdiction conferred upon the orphans court to entertain actions to compel contributions. If such jurisdiction was intended it obviously gives no support to this clause of the order. The right to contribution protected thereby is a right in a devisee whose lands have been sold, and the act gives no color of power to adjust the equities by a sale of all the lands.

The other ground upon which the order complained of was made was that a part of the lands could not be sold without manifest injury to the devisees. By a proviso in section 83, *ubi supra,* the previous direction that no more lands should be sold than may be necessary to pay the residue of debts after application of the personal estate in the hands of the executor was doubtless modified. The court had been previously required to determine whether the sale of a part of the lands would be sufficient, and if so, to specify the part to be sold. If, however, it appeared that the sale of a part which would be sufficient would diminish the value of the remainder, discretion was given to sell more or the whole. For example, if the lands consisted of a farm, the size of which, or its division into arable or other land, affected its market value, the sale of one part of it, though ample to pay the debts, might seriously diminish the value of the remainder. In such and similar cases discretion is given to sell the whole.

But, in my judgment, this provision gives no authority for the sweeping order of sale presented in the case now in hand. It is obvious that the sale of one of the double houses would raise the sum of $1,287.37. At the valuation of the executor, the sale of any one of the houses would raise $287.37. There is nothing to indicate that the sale of any one would diminish the value of the others. The plain reason disclosed for directing the sale of all the houses by the order was that it was deemed that thereby contribution could be worked out between the parties, but that is again subversive of the scheme of the legislation, which, in sub-

jecting to sale a sufficient part, gives the devisee a right to compel contribution in money. Here, in order to compel contribution, the other devisees are by this order deprived of the land devised.

For both of the errors above mentioned, the order must be reversed.